IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES H JOHNSON,

       Petitioner,

v.                                 CASE NO. 3:15-cv-481-LC-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, ECF No. 1.  The Petition stems from Petitioner's Escambia County jury-trial conviction of lewd and lascivious molestation of a victim 12 years of age or younger, for which Petitioner is serving a 10-year sentence.  The Respondent has filed a response in opposition to the petition, together with relevant portions of the state-court record.  ECF Nos. 14, 15.  Although afforded an opportunity to do so, Petitioner has not filed a reply.  Upon due consideration of the Petition, the response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has

## I. **State-Court Proceedings**

The state-court proceedings underlying the Petition are summarized in the Response, and Petitioner has not disputed the accuracy of that summary. Petitioner's first jury trial in October 2010 resulted in a mistrial. ECF No. 15-1 Exh. D. A second trial was conducted in December 2010. *Id.* Exh. E. Prior to opening statements, the State informed the Court that it was not going to call the victim's (G.J.'s) younger sister, I.W., as a witness because the prosecutor concluded that "her memory isn't very accurate." ECF No. 15-2 at 71. The State's evidence included the testimony of G.J., her mother, and her stepfather; the Petitioner's written statement to law enforcement; and testimony of investigators.

G.J.'s mother, Adesina Watson Walker, testified that at the time of the assault she lived with her husband and four children. Petitioner was dating a friend of Walker's and needed a place to stay so Walker allowed him to stay with her family for a time. On the night of the assault, Walker went to bed early because she was not feeling well. She asked G.J. to keep an eye on her younger sister. The following day, G.J. stayed in her room with the door locked, which was unusual. She would not open the door for

---

determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

Walker.  G.J. eventually came to Walker's room and described being molested the night before by "Uncle Charles" (Petitioner).  Walker called her husband in, and while they were discussing what happened they heard the front door slam.  Petitioner had left the house.  Walker called her brothers for help, and one of the brothers contacted the police.  An officer arrived, and while Walker was talking to him they saw Petitioner and his brother walking down the street.  Walker pointed him out to the officer and the officer made contact with Petitioner.  *Id.* at 94-104.

Walker testified that after the assault G.J.'s behavior changed.  She did not want Petitioner's name mentioned, and she did not want to talk about the incident.  At the time of the trial, G.J.  was still having a hard time and was in counseling.  Walker identified Petitioner in open court.  *Id.* at 105-07.

G.J.'s stepfather, Tajuan Walker, testified that when he returned to the house that night between midnight and 1 a.m., Petitioner was sitting on the sofa.  G.J. was in her bedroom, but her light was still on which was unusual.  She stayed in her room with the door locked most of the next day. Petitioner was still in the house. Tajuan Walker learned of the assault when his wife called him into their bedroom and told him.  During their conversation, Petitioner left the house.  Prior to the incident, the children

had a good relationship with Petitioner and viewed him as an uncle.  G.J.'s whole demeanor changed after the assault.  She was formerly very outgoing but became closed off to people.  *Id.*  at 117-21.

G.J. testified that she lives with her mother, stepfather, and four siblings.  She frequently helps care for her younger sister, I.W., because she is sickly.  The Petitioner used to live at her house, and she called him "Uncle Charles" and got along well with him until the assault.  That night, she was in the living room keeping an eye on her sister who was watching TV.  Petitioner was sitting on one end of the couch, and G.J. sat on the other end.  Petitioner had a blanket, and G.J. put her feet under it but did not touch him.  G.J. was partially reclining, and Petitioner slid up behind her, pulled down her pants and underwear, and touched her buttocks with his penis.   G.J. got up right after he touched her and went into the bathroom to take a bath.  Petitioner knocked on the bathroom door.  After her bath, G.J. went into her bedroom and locked the door to keep Petitioner out.  G.J. identified Petitioner in open court.  *Id.* at 129-38.

Escambia County Sheriff's Deputy Paul Panici testified that he responded to the call regarding the assault. A group of people were gathered at the Walker's house.  While Panici was interviewing Mrs. Walker, she identified the Petitioner walking down the street.  Panici made

contact with Petitioner, read him his *Miranda* rights, and asked him what happened.  Petitioner told Panici that G.J. had been "playing" with him by jumping on him and hitting him with a book.  He admitted that they did lay together on the couch, and that G.J. may have felt his penis through clothing.  Petitioner agreed to write a statement.  Panici read the written statement for the jury.  In the statement, Petitioner described G.J. playing with him and laying on the couch with him, but did not mention any other contact.  *Id.* at 157-66.

Special Victim's Unit Investigator Tony Godwin testified that after G.J. was interview he attempted to locate Petitioner but was unsuccessful. Godwin prepared an arrest warrant for judicial review.  Defense counsel objected to testimony regarding the issuance of an arrest warrant.  The prosecutor argued that he was going to elicit testimony about when Petitioner was arrested (June 2010) in order to explain to the jury why so much time elapsed between the October 2009 assault and the criminal charges.  The court overruled the objection, and Godwin testified that Petitioner was arrested in June 2010.  *Id.* at 167-71.

The State rested and defense counsel moved for a judgment of acquittal, which was denied.  After conferring with Petitioner, defense counsel announced that "we would strategically release our two defense

witnesses." Petitioner acknowledged on the record that he agreed with releasing the witnesses, understood that he had the right to remain silent, and wanted to testify. *Id.* at 172-74.

Petitioner testified that he began staying at the Walker's house in early October 2009 because he was seeing Tyshell Catrell, who also stayed at the house for a time. On the night of the incident, he arrived at the house around 10:30 p.m. I.W., the nine-year-old, let him in. The four-year-old, Trinity, was on the floor eating cereal. Everyone else was in the back of the house. Petitioner sat on the couch and dozed off while the children watched cartoons. He testified that during the evening Adesina Walker left the house twice and was gone for about an hour each time. The second time, she returned around 2:15 a.m. Petitioner pointed out to Walker that at that time I.W. was on the couch with him, at the opposite end. He testified that I.W. "is the one always following me around." Adesina Walker left the house again around 5:30 or 6:00 a.m. At some point, I.W. moved to the end of the couch to lay next to Petitioner, but he testified that there was space between them. I.W. got up from the couch to open the door for Walker when she returned. Petitioner testified that Tajuan Walker was in the house the entire time Petitioner was there, and he saw I.W. on the couch with Petitioner around 5:30 or 6:00 a.m.

Petitioner remained at the house until midday. Petitioner testified that the girl he referred to in his statements was I.W., not G.J.. He denied that G.J. was ever on the couch with him or that he touched her. *Id.* at 176-87.

On cross-examination, Petitioner initially denied that he had been drinking that day. After reviewing his testimony from the previous trial, he admitted that he had been drinking. He denied that G.J. was ever in the room with him and believed that her testimony was made up. Petitioner testified that G.J. was upset because Petitioner had started dating Tyshell Catrell. Petitioner admitted that he had been convicted of five felonies, and two crimes involving dishonesty. On re-direct, Petitioner added that G.J. was also upset with him because he got her in trouble for ruining a pizza that he and Catrell bought. *Id.* at 188-94.

After the jury was excused to deliberate, the Court inquired whether Petitioner was satisfied with his counsel's performance. Petitioner acknowledged that he was satisfied and affirmed that there was nothing his lawyer didn't do that he wanted him to do. *Id.* at 245.

The jury returned a guilty verdict, and Petitioner was sentenced to 10 years' imprisonment. Petitioner did not initially appeal but was granted a belated appeal in July 2011. His appeal raised a claim of error regarding the court's admission of evidence and argument concerning: the "lifelong

impact" of the crime; the arrest warrant and delay in execution; and closing argument suggesting that defense counsel was skilled in outmaneuvering a child on cross-examination. ECF No. 15-1 Exh. I. The First DCA affirmed, *per curiam*, without written opinion. *Johnson v. State*, 103 So.2d 148 (Fla. 1st DCA 2012).

On August 21, 2013, Petitioner filed a Rule 3.850 motion for postconviction relief raising ineffective-assistance claims. The motion was dismissed as facially insufficient with leave to amend. *Id.* Exh. M at 1-70. Petitioner filed an amended motion that was summarily denied, without an evidentiary hearing, on January 31, 2014. *Id.* at 86-99. The First DCA affirmed, *per curiam*, without written opinion. *Johnson v. State*, 139 So.3d 891 (Fla. 1st DCA 2014).

On October 6, 2014, Petitioner filed a second postconviction motion raising additional ineffective-assistance claims. *Id.* Exh. Q at 1-17. The trial court denied the motion as successive. *Id.* at 18-49. The First DCA affirmed *per curiam* without written opinion. *Id.* Exh. U.

Petitioner then filed the instant federal habeas corpus petition, which Respondent concedes is timely. Petitioner asserts the following four claims: (1) Counsel was ineffective for failing to call I.W. to testify that G.J. never entered the room where Petitioner and I.W. were sitting; (2) Counsel

was ineffective for failing to properly object to testimony regarding preparation and issuance of an arrest warrant, which implied that there was sufficient evidence to charge him with lewd and lascivious molestation; (3) Counsel was ineffective for failing to object to the imposition of fees and costs; and (4) The trial court denied Petitioner due process by summarily denying his second postconviction motion as successive. ECF No. 1.

In opposition to Petitioner's claims, the Respondent contends that his first three claims are unexhausted because they were raised only in Petitioner's second postconviction motion, which was summarily denied as unexhausted. Respondent contends that Petitioner's fourth claim does not present a cognizable federal habeas claim. ECF No. 14.

## II. Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III. Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our

federal system: State courts are adequate forums for the vindication of federal rights." *Id*.   This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

*Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV. <u>Discussion</u>

### A. *Failure to Exhaust Ineffective-Assistance Claims*

Respondent contends that the three ineffective-assistance claims asserted in Petitioner's federal petition are unexhausted and procedurally defaulted. Petitioner's first Rule 3.850 postconviction motion asserted three ineffective-assistance claims: (1) Counsel failed to impeach G.J.; (2) Counsel failed to move to exclude Adesina Walker and Tajuan Walker as witnesses; and (3) Counsel failed to depose I.W., who would have provided "favorable testimony." ECF No. 15-3 at 77-88. The trial court summarily rejected each of these claims, finding that each was facially insufficient because: (1) Petitioner failed to allege what testimony by G.J. was inconsistent and how the lack of impeachment affected the outcome of the trial; (2) There was no legal basis for "excluding" Adesina and Tajuan Walker as witnesses, and Petitioner did not explain how counsel's handling

of the witnesses prejudiced Petitioner; and (3) Petitioner failed to establish that I.W. would have provided favorable testimony and that he was prejudiced by counsel's failure to depose her.  ECF No. 15-3 at 90-93.

Petitioner's second Rule 3.850 motion argued that it was not subject to the successive-motions bar because his first motion was denied on procedural grounds.  ECF No. 15-3 at 123-39.  The second motion argued that (1) Counsel was ineffective for failing to call I.W. as a witness when I.W. would have provided exculpatory testimony that G.J. was never in the living room that night; (2) Counsel was ineffective for failing to object to Godwin's testimony that an arrest warrant was issued by a judge charging Petitioner with lewd and lascivious molestation; and (3) Counsel failed to object to the Court's assessment of "multiple fees" following his conviction. *Id.*

With respect to Petitioner's first claim, the court found that while it was phrased somewhat differently from the first motion (failure to call the witness to testify versus failure to investigate and depose the witness), it was in substance the same claim and therefore it was successive.  The court found that Petitioner had again failed to establish that he was prejudiced by counsel's performance with respect to not calling I.W. to

testify, and therefore his second attempt at raising the same claim was insufficient as a matter of law.  ECF No. 15-3 at 141.

The court found that Petitioner's remaining two claims were successive because he had not shown good cause for failing to raise them in his original motion.  The court stated "[w]here an initial motion for postconviction relief raises the claim of ineffective assistance of counsel, the trial court may deny a successive motion which raises additional grounds for ineffective assistance of counsel if abuse of process is evident."  To overcome the successive bar, "'the movant must allege that the grounds asserted were not known and could not have been known at the time of the initial motion.'" Because Petitioner failed to show that the grounds could not have been raised in his initial motion, the claims were successive.  *Id.* at 141 (quoting *Ragan v. State*, 643 So.2d 1175 (Fla. 3d DCA 1994)).

On this record, the court agrees with Respondent that Petitioner's second and third federal habeas claims – which are the same as the second and third claims in his successive state-court postconviction motion – are unexhausted.  Petitioner has made no showing of cause or prejudice sufficient to overcome the procedural default, and therefore these claims are foreclosed from federal review pursuant to 28 U.S.C. § 2254(b)(1)(A).

Petitioner's first federal habeas claim, however – concerning counsel's failure to call I.W. as a witness – was, as the state court found, raised in substance in Petitioner's first postconviction motion which was denied because Petitioner failed to provide sufficient detail regarding the substance of the alleged testimony and failed to show how the omission of the testimony prejudiced the trial. Petitioner provided additional detail in his second postconviction motion, but the court again determined that Petitioner had failed to establish prejudice. *See* ECF No. 15-3 at 92-93, 140-41. Affording Petitioner the benefit of liberal construction, this claim arguably was exhausted in state court. In any event, it is clear that the claim is due to be denied on the merits, and the Court may deny a claim on the merits notwithstanding failure to exhaust. *See* 28 U.S.C. § 2254(b)(2).

## B.  *Merits: Failure to Call I.W. as a Witness*

Petitioner claims that had counsel called I.W. to testify, she would have corroborated Petitioner's testimony that G.J. never entered the living room that night and other details of Petitioner's testimony. The state court found that Petitioner's allegations were insufficient to demonstrate prejudice. ECF No. 15-3 at 141.

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial

evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).

In this case, Petitioner's claims regarding the substance of I.W.'s asserted "exculpatory" testimony are wholly speculative and self-serving. In his state postconviction motion, Petitioner referred to I.W. as the "premiere witness" who could support his version of events. ECF No. 15-3 at 131. This characterization flies in the face of the trial record. During the trial, Petitioner was present in court when the State announced that it would *not* call I.W. as a witness due to the prosecutor's conclusion that "her memory isn't very accurate." ECF No. 15-2 at 71. Plainly, I.W. was known to counsel and Petitioner at that time as an available witness, and according to Petitioner I.W.'s testimony would have contradicted the victim's testimony on virtually every point. Despite the claimed importance of I.W. as a witness, the record does not reflect that Petitioner ever raised any concerns about the lack of testimony by I.W. during trial, even when he was explicitly afforded an opportunity to do so. Petitioner testified in his own behalf and never suggested in his testimony that his defense was compromised because I.W. was not called to corroborate his version of events. At the conclusion of the evidence, the Court specifically inquired of

Petitioner whether he was satisfied with counsel's performance or whether counsel had failed to do anything that Petitioner wanted him to do. Petitioner affirmed that he was satisfied with his counsel. If I.W. was in fact the "premiere witness" who could exculpate Petitioner, he had an opportunity at that time to alert the court to the fact that a critical witness had not been called. Petitioner's failure to do so seriously undermines the credibility of his postconviction claims regarding the substance and importance of I.W.'s testimony.

On this record, the Court concludes that Petitioner has failed to make the "heavy showing" necessary to establish a credible claim that counsel was ineffective for failing to call I.W. as a witness. The record does not support a conclusion that counsel was either deficient or that Petitioner was prejudiced by counsel's performance. Thus, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, federal law, or resulted in an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

## C. Denial of Due Process in Postconviction Proceeding

Petitioner contends that the trial court denied him due process in finding that his second postconviction motion was due to be denied as

successive.   ECF No. 1.  It is well established in the Eleventh Circuit that a

prisoner's challenge to the process afforded him in a state postconviction

proceeding does not constitute a cognizable claim for habeas corpus relief.

This is so because such a claim represents an attack on a proceeding

collateral to the prisoner's confinement and not the confinement itself.

*Alston v. Dep't of Corr., Fla.,* 610 F.3d 1318, 1326 (11th Cir. 2010); *Carroll*

*v. Sec 'y DOC, Fla. Attorney Gen.,* 574 F.3d 1354, 1366 (11th Cir. 2009)

(holding that habeas petitioner's claim—that the state court violated his due

process rights when it summarily denied his postconviction claim without an

evidentiary hearing—did not state a claim on which federal habeas relief

could be granted); *Anderson v. Sec'y for Dep't of Corr.,* 462 F.3d 1319,

1330 (11th Cir.2006) (per curiam) (holding that a state court's failure to

conduct an evidentiary hearing on a postconviction motion does not

constitute a cognizable claim for federal habeas relief).

Thus, to the extent Petitioner seeks federal habeas relief on the

ground that the trial court erred in finding his second postconviction motion

successive under state law, Petitioner fails to state a claim cognizable on

federal habeas review because his claim does not undermine the legality of

his conviction but merely alleges a defect in a proceeding collateral to his

confinement. Federal habeas relief on Ground Four may be denied on this basis.

## V.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  <u>Conclusion</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** that the

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,  ECF No.

1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 10th day of December 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**